CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
JUL 22 2011
JULIA C. DUDLEY, CLERK
BY: /s/ Pam Coleman
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| ADINA J. HELM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 6:10-cv-00019 |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, ) | By: Michael F. Urbanski |
| Commissioner of Social Security, ) | United States District Judge |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiff Adina Helm ("Helm") brought this action for review of the Commissioner of Social Security's ("Commissioner") decision denying her claim for supplemental security income ("SSI") benefits under the Social Security Act (the "Act"). Helm seeks an award of disability benefits due to her Attention Deficit Hyperactivity Disorder ("ADHD"), Asperger's Disorder ("Asperger's"), and an unspecified personality disorder. Helm filed an application for SSI benefits on November 1, 2007, shortly after she turned eighteen years old. An Administrative Law Judge ("ALJ") concluded that Helm was not totally disabled, finding that Helm had the residual functional capacity ("RFC") to perform simple repetitive tasks at all exertional levels. (Administrative Record "R." at 15.) Helm filed a new application for SSI benefits on October 15, 2009, and on May 5, 2010, the Social Security Administration concluded that Helm was disabled as of October 15, 2009.

On appeal, Helm argues that the weight of the evidence shows she is disabled and the ALJ's determination is not supported by substantial evidence. Furthermore, Helm contends that new, material evidence in the form of a psychological evaluation by Dr. David S. Leen and a

subsequent award of benefits proves she is disabled. The Commissioner asserts that substantial evidence supports the ALJ's decision at the time it was made, but on brief does not respond to the new evidence argument. Upon review of the administrative record, the court finds that Dr. Leen's new psychological evaluation and the subsequent disability determination requires that this case be **REMANDED** for further administrative consideration under sentence six of 42 U.S.C. § 405(g). As such, plaintiff's motion for summary judgment (Docket #12) is **GRANTED** and defendant's motion for summary judgment (Docket #16) is **DENIED**.

**I.**

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "'Under the Social Security Act, [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct, legal standard.'" Id. (alteration in original) (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). "Although we review the [Commissioner's] factual findings only to establish that they are supported by substantial evidence, we also must assure that [his] ultimate conclusions are legally correct." Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).

The court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to satisfy the Act's entitlement conditions. See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient

to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The "[d]etermination of eligibility for social security benefits involves a five-step inquiry." Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). This inquiry asks whether the claimant (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and if not, (5) whether he or she can perform other work. Heckler v. Campbell, 461 U.S. 458, 460-62 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. 20 C.F.R. § 416.920(a)(4). Once the claimant has established a prima facie case for disability, the burden then shifts to the Commissioner to establish that the claimant maintains the RFC,[1] considering the claimant's age, education, work experience, and impairments, to perform

---

[1] RFC is a measurement of the most a claimant can do despite his limitations. See 20 C.F.R. § 416.945(a). According to the Social Security Administration:

> RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.

Social Security Regulation (SSR) 96-8p. RFC is to be determined by the ALJ only after he considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain). See 20 C.F.R. § 416.929(a).

alternative work that exists in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## II.

On the date of the administrative hearing, June 25, 2009, Helm was 19 years old. Helm completed the eighth grade, and was attending a College for Living Program for special education students. She has had no gainful employment and does not drive. The ALJ issued his decision September 23, 2009, determining that Helm was not disabled under the Act. Helm sought review by the Appeals Council, which denied her request for review on March 24, 2010. She filed this appeal in federal court on April 29, 2010, and a motion for summary judgment supported by a memorandum on November 8, 2010. The Commissioner filed a motion for summary judgment supported by a memorandum on December 30, 2010. The court heard the parties' arguments on February 24, 2011. This matter is now ripe for disposition.

After the ALJ issued his decision in this case, Helm filed another application for benefits on October 15, 2009. The Social Security Administration determined that Helm was disabled as of that date and awarded benefits. Helm attached to her brief two documents related to her subsequent application. Attached as Appendix 1 is the May 5, 2010 SSI Notice of Award. Attached as Appendix 2 is a March 22, 2010 Psychology Report authored by David S. Leen, Ph.D., of the Virginia Department of Rehabilitative Services, concluding that Helm cannot work. (Appendix 2 to Pl.'s Br., hereinafter "App'x 2".) Dr. Leen's report contradicts the findings of the state agency psychologist upon which the ALJ relied in finding Helm not to be disabled.

# III.

## A. Factual Background and Medical Evaluations

At the time of the administrative hearing, Helm was 19 years old and enrolled in a vocational education program for special education students. Helm lives with her mother and has never been employed. She had been diagnosed with Asperger's, ADHD, and a personality disorder.

Helm has been evaluated by multiple mental health professionals. Dr. Kathryn Kirkpatrick, a licensed clinical psychologist, evaluated Helm on February 28, 2005, when she was 15 years old. (R. 231.) At the time of the evaluation, Helm was placed in Patrick Henry Girl's Home for treatment for emotional and behavioral functioning issues. Kirkpatrick concluded that Helm had social and behavior problems and problems with concentration. (R. 238.) She recommended therapeutic intervention to address these issues and noted that Helm may respond well to treatment involving a "very structured and specific system of rewards and consequences." (R. 239.) The record contains no further evidence regarding Helm's stay at the Patrick Henry Girl's Home or her progress in response to her treatment there.

Lin Shaner, L.P.C., evaluated Helm on April 20, 2007. Shaner found that Helm was of average intelligence in most areas, but she scored lower in tests that measure social judgment and common sense. (R. 212.) Shaner reported that Helm had some problems with distraction and managing her anger, which would make it difficult to work with people. (R. 213.) She opined that Helm may have the ability to do some limited types of work if certain conditions were met. (R. 216.) The ALJ considered Shaner's findings but gave them little weight because they contradicted findings rendered by subsequent evaluators, Donna Gutierrez and Dr. E. Wayne Sloop. (R. 12, 17.)

Donna Gutierrez, a certificated rehabilitation counselor with the Virginia Department of Rehabilitative Services, evaluated Helm on July 9, 2007. During the evaluation, Gutierrez noted that Helm was pleasant, talkative, followed directions, and asked for clarification when she needed it. (R. 243.) Helm successfully filed out forms similar to a short job application but asked questions about how to fill out the forms. On simulated work assignments, Helm's productivity rates were low, but they were within a range that indicated that she could meet competitive work standards with practice. (R. 242.) Helm scored above average on the "form perception" and "clerical perception" sections of the aptitude test and average on most other sections. (R. 244.) Gutierrez opined that Helm could benefit from services of the Department of Rehabilitative Services and achieve an employment outcome with appropriate supportive services. (R. 242.)

Dr. E. Wayne Sloop, a consultative examiner and clinical psychologist, examined Helm on February 4, 2008. He observed that Helm had a disheveled appearance, but she apologized for her appearance and realized that she should have fixed her hair before she came to see him. (R. 283.) During the examination Helm told Sloop that she was starting to "grow out of" her ADHD and that her ADHD and Asperger's would not interfere with her ability to work. (R. 284.) Helm reported that she does not shop or cook, but she does a few household chores, such as dusting and washing dishes. (R. 284.) She reported that she had friends at church and school, and Sloop opined that she does not have severe problems with social functioning. (R. 285.) During the examination, Helm was cooperative and able to complete tasks in a timely and appropriate manner. (R. 284.) When completing tasks, Helm appeared to think logically and coherently and to concentrate appropriately. (R. 286.) Dr. Sloop perceived that Helm was socially and emotionally immature and did not understand proper boundaries in relating to

others. (R. 283.) Sloop reported her Global Assessment of Functioning ("GAF") to be 65–70 (R. 283), indicating "mild symptoms . . . but generally functioning pretty well." (R. 16.) Sloop opined that her problems would not preclude her from employment that involved performing simple repetitive tasks. However, supervisors may need to explain complex instructions to her multiple times, and Helm may have problems in jobs working with the public on a regular basis because she would miss subtle social cues. (R. 288.)

### B. Testimony from Non-Medical Witnesses

Vivian Rhodes, Helm's special education teacher, wrote a letter regarding Helm's ability to work. (R. 343.) Rhodes routinely worked with Helm during the 2008-2009 school year and believes that "she would not be able to sustain full time employment in a competitive work environment." (R. 343.) Rhodes reported that Helm does not understand or respect the personal space or feelings of others. She also noted that Helm is often rude to her peers and becomes angry when disciplined. Helm takes no responsibility for her behavior and blames others for it. However, Rhodes believes that Helm may be able to work if she had a "job coach." (R. 343.) The ALJ considered this opinion but gave it little weight as far as it contradicted the medical evidence of Dr. Sloop and Gutierrez. (R. 17.)

Ron Simmons, Helm's counselor with the Virginia Department of Rehabilitative Services, wrote a letter to Helm's attorney regarding her ability to work. (R. 344.) He noted that Helm performed well in clinical settings, such as in his office and at vocational evaluations. However, based upon reports from Rhodes, Simmons questioned Helm's ability to work due to "her interpersonal skills, her social judgment skills, and her inability to maintain successful and healthy relationships with co-workers and supervisors, and personal hygiene issues." (R. 344.)

The ALJ gave little weight to Simmons' opinion because it was based on third-party knowledge from Rhodes. (R. 17.)

Helm testified at her hearing that she is easily distracted and emotionally disturbed. (R. 16.) She also testified that she loses her temper under high stress. She reported having "hygiene issues," having to be told to bathe, and not having friends. (R. 16.) Ms. Stinnett, Helm's mother, also testified at the hearing. (R. 16.) Stinnett testified that Helm does not comprehend personal space and that she gets picked on at school, which hurts her and causes her to lose her temper under certain circumstances. She also testified that Helm's teachers reported that Helm had problems staying on task and dressing herself. (R. 16.) The ALJ gave less weight to Stinnett's opinion because it contradicted medical evidence and because her statements were self-serving, as the claimant is her daughter. (R. 17.)

In finding that Helm was not disabled under the Act, the ALJ gave the most weight to the medical opinions of Dr. Sloop and Donna Gutierrez and less weight to opinions that contradicted them. (R. 17.)

### C. New Evidence

Helm filed a new application for SSI benefits on October 15, 2009. On March 18, 2010, she was evaluated by Dr. David Leen, a psychologist with the Virginia Department of Rehabilitative Services, who prepared a Psychology Report dated March 22, 2010. (App'x 2.) Dr. Leen reached a much different conclusion than Dr. Sloop and Donna Gutierrez. One important reason for this difference appears to be that Stinnett, Helm's mother, accompanied Helm to her evaluation with Dr. Leen, and Stinnett reported different information than the information Helm reported to her previous evaluators. Dr. Leen noted that Stinnett "provided a

portion of the background and mental status information" and that "both the claimant and her mother appear to be reliable [and] credible." (App'x 2.)

At Helm's evaluation, Dr. Leen found her to be socially anxious and naive. Helm's mother reported that she has difficulty focusing her attention toward activities, such as household chores or recreational activities. She also reported that Helm acts immaturely around her peers. For example, she refuses to share her possessions, she prefers to play with children much younger than herself, and often prefers to stay in her bedroom and has to be forced to exit. She also becomes upset or frustrated over minor, routine challenges, such as washing the dishes. Helm's mother also related that she has to encourage and supervise Helm's personal hygiene. Helm has only superficial contact with other developmentally delayed peers at school, and no stable or meaningful peer relationships outside of school.

Dr. Leen relied on Helm's previous diagnosis of Asperger's and diagnosed Helm with a "pervasive developmental disorder, not otherwise specified" and ADHD. (App'x 2.) He also assessed Helm's GAF at 41, more than twenty points below Dr. Sloop. A GAF of 41–50 indicates "serious symptoms . . . or any serious impairment to social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) 35 (4th ed. Text Revision 2000). Dr. Leen opined that Helm is unable to perform any work on a full-time basis, with or without additional supervision. Dr. Leen concluded this because Helm is unable to accept instructions, interact appropriately with coworkers or the public, and deal with the stresses of competitive work. (App'x 2.) Dr. Leen wrote:

> Secondary to the claimant's marked impairments in abilities for social adjustment, and her low threshold for becoming frustrated, anxious and distraught in reaction to even routine, minor, situational challenges, she is unable to perform work activities of

> any kind on a consistent, full-time basis, with or without additional supervision. She is unable to maintain reliable attendance in a workplace. She is unable to accept instructions from supervisors and deal appropriately with coworkers and the public on a consistent basis. She is unable to complete a normal workweek without interruptions resulting from her impairments in social skills and stress tolerance.

Shortly after Dr. Leen completed his evaluation, the Social Security Administration found Helm to be disabled.

### D. Analysis of New Evidence

Pursuant to sentence six of 42 U.S.C. § 405(g), a reviewing court may remand a case to the Commissioner upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding. See Borders v. Heckler, 777 F.2d 954, 955 (4th Cir. 1985). Evidence is new if it is relevant to the determination of disability at the time the application was first filed and not merely cumulative. Id. at 955; see also Wilkins v. Sec'y, Dep't Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991) ("Evidence is new within the meaning of this section if it is not duplicative or cumulative."). It is material if there is a reasonable possibility that the new evidence would have changed the outcome. Wilkins, 953 F.2d at 96; Borders, 777 F.2d at 955. There must be a good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner, and the claimant must present to the remanding court at least a general showing of the nature of the new evidence. Borders, 777 F.2d at 955.

In this case, the Commissioner's decision to grant disability benefits on a subsequent application less than one month after the ALJ's unfavorable decision constitutes both new and material evidence. See Hayes v. Astrue, 488 F. Supp. 2d 560, 565 (W.D. Va. 2007) (Jones, J.) ("[W]here a second social security application finds a disability commencing at or near the time

a decision on a previous application found no such disability, the subsequent finding of a disability may constitute new and material evidence."); Reichard v. Barnhart, 285 F. Supp. 2d 728, 734 (S.D. W.Va. 2003) (finding the ALJ's decision granting disability benefits less than a week after he first pronounced claimant was not disabled is new and material evidence). While the grant of benefits on a subsequent application is not preclusive evidence as to a prior application, it is new and material evidence warranting a remand. Hayes, 488 F. Supp. 2d at 565 (citing Bruton v. Massanari, 268 F.3d 824, 827 (9th Cir. 2001)); see also Wilkins, 953 F.2d 93 (4th Cir. 1991).

Likewise, Dr. Leen's psychological evaluation is both new and material. Dr. Leen's report is new because it is relevant to the determination of disability at the time the application was filed and it is not cumulative. The Commissioner found Helm to be disabled as of October 15, 2009, less than one month after the ALJ's decision denying her benefits. The court has no records, other than Dr. Leen's evaluation, to determine the reason for the Commissioner's decision to grant benefits. As the court does not have all of the records upon which the award of benefits on the second application was based, it cannot determine if the disability determination was based on evidence similar to that considered by the ALJ on the application at issue in this case or whether there were substantial changes in Helm's mental condition subsequent to the denial of benefits by the ALJ. However, the evidence in the record demonstrates that Helm's condition at the time benefits were denied was likely to be no different than her condition at the time benefits were granted, and therefore, Dr. Leen's report is relevant to determining disability. Helm was found to be disabled due to Asperger's and ADHD. She has suffered from these conditions for many years, and there is no evidence that suggests a material deterioration of Helm's condition after the ALJ's decision in this case. Perhaps such evidence exists, but it is not

reflected in the record of this case. The chronic nature of Helm's impairments, combined with the decision to commence her disability benefits less than one month after the decision in this case, tends to suggest otherwise. Furthermore, Dr. Leen's opinion is not cumulative because the record does not contain any opinion by another clinical psychologist that Helm is disabled.

Dr. Leen's evaluation is material because there is a reasonable probability that it would have changed the outcome of the case. The ALJ relied heavily on Dr. Sloop's opinion due to his medical findings and expertise as a clinical psychologist. (R. 17.) Dr. Leen, also a clinical psychologist, has similar expertise to that of Dr. Sloop and had a similar opportunity to examine Helm and make medical findings. However, Dr. Leen opined that Helm is not able to work. This conflict between similarly qualified experts creates a reasonable probability that the outcome of the case may be different than the ALJ's original decision.

Furthermore, some of the evidence that the ALJ considered, but afforded little weight due to its inconsistency with the medical opinion of Dr. Sloop, is bolstered by the medical conclusions of Dr. Leen. For example, Ms. Rhodes, Helm's special education teacher, spent significant time interacting with Helm during the period the ALJ determined Helm was not disabled. Rhodes' testimony regarding Helm's inability to get along with others is consistent with the findings of Dr. Leen. (R. 343.) Thus, it appears that Dr. Leen's report may be highly relevant and material to the determination of disability in this case.

There is good cause for the failure to incorporate this evidence into the record during the prior proceeding, as Dr. Leen's report was dated March 22, 2010, only two days before the Appeals Council's March 24, 2010 decision. The Commissioner's subsequent Notice of Award came even later, on May 5, 2010. Finally, Helm has presented the court with a general showing

of the nature of this new evidence, as the notice of the award of benefits and Dr. Leen's report is attached to her summary judgment brief.

Given the long term nature of Helm's mental impairments, and the testimony and opinion of non-medical witnesses who knew Helm well, the new and material evidence consisting of Dr. Leen's Psychology Report and the SSI Award should be considered by the Commissioner in determining an appropriate onset date of Helm's disability. Therefore, this case is **REMANDED** pursuant to sentence six of 42 U.S.C. § 405(g) for consideration of this new evidence in determining whether an earlier disability onset date is warranted. See Hayes, 488 F. Supp. 2d at 565. Accordingly, plaintiff's motion for summary judgment (Docket #12) is **GRANTED** and defendant's motion for summary judgment (Docket #16) is **DENIED**.

V

At the end of the day, it is not the province of the reviewing court to make a disability determination. It is the court's role to determine whether the Commissioner's decision is supported by substantial evidence. In this case, substantial evidence does not support the Commissioner's decision, as there is a potential inconsistency between the denial of disability benefits and the subsequent grant of benefits based on the same alleged mental limitations less than one month after the ALJ's unfavorable decision. On remand, the Commissioner should also consider Dr. Leen's March 22, 2010 Psychology Report, dated just two days before the Appeals Council's action in this case. Accordingly, this case is remanded pursuant to sentence six of 42 U.S.C. § 405(g) for consideration of this new evidence in determining whether an earlier disability onset date is warranted, and, if so, determining such a date.

The Clerk of Court is hereby directed to send a certified copy of this Memorandum Opinion and accompanying Order to all counsel of record.

                Entered: July 22, 2011

                */s/ Michael F. Urbanski*

                Michael F. Urbanski
                United States District Judge